IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
   *Plaintiff*,

v.

RAYMOND E. DAVIS,
   *Defendant*

Civil Action No. ELH-13-628

**MEMORANDUM**

Raymond Davis, the self-represented defendant, filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), asserting "extraordinary and compelling circumstances" in light of the COVID-19 pandemic. ECF 295 (the "Motion"). He also included an exhibit. ECF 295-1. The government filed a response in opposition to the Motion on June 9, 2020 (ECF 298), along with numerous exhibits. *See* ECF 298-1 to 298-7; ECF 300. No reply has been filed.

A hearing is unnecessary to resolve the Motion. For the reasons that follow, I shall deny the Motion, without prejudice.

**I.    Background**

On November 7, 2013, a federal grand jury sitting in the District of Maryland returned an indictment against Davis and five other defendants. ECF 9. Davis was charged in Count One with conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* at 1. A Superseding Indictment was filed on December 12, 2013 (ECF 42), adding two defendants. And, Davis was also charged in Count Two, with conspiracy to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. A Second Superseding Indictment was filed on March 27, 2014. ECF 88.

On July 10, 2014, Davis entered a plea of guilty (ECF 136), pursuant to a plea agreement (ECF 137), to the lesser included charge in Count One of the Second Superseding Indictment, *i.e.*, "Conspiracy to Distribute and Possess with Intent to Distribute 100 grams or more of a Mixture or Substance Containing Heroin, in violation of 21 U.S.C. § 846." ECF 137, ¶ 1.  The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of imprisonment of 132 months' imprisonment as the appropriate disposition. *Id.* ¶ 9.  However, to avoid a sentencing disparity with other defendants, the parties subsequently agreed to a sentence of 120 months of incarceration. *See* ECF 230.

The Plea Agreement included a factual stipulation. ECF 137, ¶ 6 at 5-6.  According to the stipulation, Davis participated in a conspiracy to distribute heroin between August 2012 and November 2013, and to distribute cocaine base between June and November 2013. *Id.* at 5.  In furtherance of the heroin conspiracy, Davis would "obtain quantities of heroin" from his co-conspirators "and provide that heroin to lieutenants who managed the street level distribution of heroin" in the area of the Gilmor Homes in West Baltimore. *Id.*  Davis "also assisted with the cutting and packaging of heroin" at a stash location that he helped to maintain. *Id.*

Davis's phone was subjected to a wiretap pursuant to a court order, with the result that "hundreds of conversations were intercepted in which [he] discussed conducting, financing or managing an illegal narcotics distribution enterprise." *Id.*  Davis was intercepted on multiple occasions making specific references to the distribution of heroin. *Id.*

A coconspirator was arrested on June 25, 2013.  Law enforcement recovered 228 ziplock bags of heroin and $4,500 in U.S. currency. *Id.*  Another codefendant was arrested on October 29, 2013, and he was found with 32 grams of heroin and $2,157. *Id.*  Thereafter, pursuant to a

2

search warrant at the stash location, law enforcement agents recovered 1.6 kilograms of heroin and drug distribution materials. *Id.* A Smith & Wesson .357 revolver was also recovered. *Id.*

Another search warrant was executed on November 30, 2013, at the home of one of Davis's coconspirators. *Id.* at 6. Law enforcement recovered $117,510 and drug paraphernalia. *Id.* In the Plea Agreement, Davis "admits that this money consists of the proceeds of illegal drug trafficking." *Id.* Notably, Davis also admitted that he and other conspirators conspired to distribute at least one kilogram but less than three kilograms of heroin. *Id.* And, Davis admitted that the revolver was possessed by him and others to protect the stash. *Id.*

Sentencing was held on March 3, 2015. ECF 235. According to the Presentence Report ("PSR," ECF 154), Davis was 27 years of age. He had a final offense level of 29, and a Criminal History Category of III. *See* ECF 237. His advisory sentencing guidelines called for a period of imprisonment ranging from 108 to 135 months. *Id.* As agreed, the Court sentenced the defendant to a term of 120 months, with credit from January 23, 2014. ECF 236.

Davis is presently incarcerated at FCI Elkton in Lisbon, Ohio. ECF 295 at 1. He is almost 33 years of age. ECF 300 at 3. The Bureau of Prisons ("BOP") has provided a projected release date for Davis of September 10, 2022. ECF 295-1.

The government acknowledges that FCI Elkton is "one of the BOP facilities that has experienced the largest numbers of infections from the novel coronavirus . . . ." ECF 298 at 1. But, Davis has provided no information as to any health conditions that make him particularly vulnerable to COVID-19. Nor has Davis indicated in the Motion that he sought relief from the Warden before filing the Motion. Moreover, the government has submitted an email from Rachel Melchor, Senior CLC Attorney at the BOP. ECF 298-1. She states: "It does not appear that inmate Raymond Davis. . . has submitted a request" for release. *Id.* at 2.

## II.     Discussion

### A.  Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Section 3582(c) is titled "Modification of an imposed term of imprisonment."  Under § 3582(c)(1)(A), the court, upon motion of the Director of BOP or the defendant, upon exhaustion of administrative rights,  may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing

Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:[1]
>
> (A)   Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) **suffering from a serious physical or medical condition**,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason

---

[1] Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). And, compassionate release is a rare remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### B. COVID-19

Davis filed his Motion in the midst "of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[2] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020). As Judge Grimm

---

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

has observed, the "judges of this court have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to provide a detailed description of its "unprecedented nature and impact . . . ." *Id.*

But, it is important to reiterate that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories…." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). And, there is currently no vaccine, cure, "or proven effective treatment." *Id.* (citation omitted).

As of June 17, 2020, COVID-19 has infected over 2.1 million Americans and has caused more than 117,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed June 17, 2020). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness from the virus. The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), stayed, ___ F. App'x ___, 2020 WL 3100187 (6th Cir. June

8

11, 2020). For a significant period of time, life as we have known it came to a halt. Even now, although many businesses have reopened, restrictions are in place.

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to decide for themselves to implement recommended health precautions, such as isolating themselves from others. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. Nor are they readily able to secure products to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely");[3] *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Moreover, the BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who

---

[3] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

are infected. *See* ECF 334 at 6-7 (detailing "preventive and mitigation measures" that BOP has implemented to combat COVID-19). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2).

The Attorney General issued another memorandum to Carvajal on April 3, 2020, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

Despite BOP's mitigation efforts, the virus persists in penal institutions.[4] As of June 15, 2020, the BOP reported that 1,220 inmates and 168 BOP staff have tested positive for COVID-19, and 85 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed June 15, 2020).

---

[4] The *New York Times* has reported that cases of the coronavirus "have soared in recent weeks" in prisons and jails across the country. Timothy Williams et al., *Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide*, NEW YORK TIMES (June 18, 2020), https://nyti.ms/37JZGH2.

With respect to FCI Elkton, the government concedes that it is among the federal prisons "hit hardest by the COVID-19 pandemic." ECF 298 at 7. As of June 3, 2020, 461 inmates tested positive, 112 inmates had recovered, seven staff tested positive, and 46 staff had recovered. Some of the inmates who tested positive had no symptoms. *Id.* at 12. A total of nine inmates have died. But, the last death occurred on May 8, 2020. *Id.* at 8.

As a result of the outbreak at Elkton, a class action lawsuit was filed in the Northern District of Ohio under 28 U.S.C. § 2241. *See Wilson v. Williams*, No. 4:20-cv-00791 (N.D. Ohio), ___ F.3d ___, 2020 WL 3056217 (6th Cir. June 9, 2020) (vacating preliminary injunction. On appeal, the Sixth Circuit vacated the District Court's preliminary injunction. Nevertheless, as a result of the litigation, quite a few inmates were released to home confinement or transferred to other facilities, thereby reducing the population. *See* ECF 298 at 10-11.

**C. Analysis**

Davis does not expressly reference 18 U.S.C. § 3582(c)(1)(A)(i) in his Motion. But, he identifies the COVID-19 pandemic as an "extraordinary and compelling" circumstance, for which he asks the Court to reduce his sentence, so that he may "finish [his] remaining time on home confinement." ECF 295 at 1-2. The government counters that Davis is ineligible for compassionate release because he has not exhausted his administrative remedies. ECF 298 at 1. Further, the government argues that Davis "is a relatively young and vigorous man who falls into none of the high-risk categories that have been identified as increasing the risk of an adverse result from COVID-19." *Id.*

Of import here, the Motion is silent as to any attempt by defendant to exhaust his remedies before seeking relief from this Court. Although the Fourth Circuit has not addressed the issue, judges in this district have generally found that 18 U.S.C. § 3582 is not subject to

11

equitable waiver. *United States v. Maycock*, GLR-14-0133, 2020 WL 2395620, at *2 (D. Md. May 12, 2020); *United States v. Osagbue*, PX 19-448, 2020 WL 1939713, at *1 (D. Md. Apr. 22, 2020); *United States v. Underwood*, TDC-18-0201, 2020 WL 1820092, at *2-3 (D. Md. Apr. 10, 2020); *United States v. Johnson*, ___ F. Supp. 3d ___, 2020 WL 1663360, at *5-6 (D. Md. Apr. 3, 2020). And, those courts that have waived the exhaustion requirement have done so only where it is clear that petitioning the BOP would be an exercise in futility. *See, e.g.*, *United States v. Barringer*, PJM 13-0129, 2020 WL 2557035, at *2-3 (D. Md. May 19, 2020) (waiving exhaustion requirement because defendant was designated to one prison but had not yet been transferred and remained in the custody of the U.S. Marshal Service).

No such circumstances are apparent in Davis's case. Accordingly, because Davis has not demonstrated that he petitioned the BOP for release and 30 days have elapsed, his Motion is premature.

Moreover, even if Davis exhausted his administrative remedies, he fails to identify any extraordinary and compelling reason to justify his release. He is not terminally ill, over 65 years of age, and does not claim to have any of the CDC risk factors for COVID-19, which would establish eligibility for compassionate release. Fear of contracting the novel coronavirus while incarcerated is not a sufficient reason for granting compassionate release. "Simply put, the coronavirus is not tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. March 24, 2020). And, even if the Court determined that the defendant met one of the conditions establishing an extraordinary or compelling reason justifying release, the Court's analysis of the factors under 18 U.S.C. § 3553(a) leads the Court to conclude that release is not warranted.

### III. Conclusion

For the reasons stated above, I shall deny the Motion (ECF 295), without prejudice. An Order follows, consistent with this Memorandum.


Date: June 23, 2020                           /s/
                                   Ellen Lipton Hollander
                                   United States District Judge